Michael Isencraft Good morning, your honors. My name is Michael Isencraft and I represent plaintiffs as appellants in this matter. Around four years ago, I stood before a panel of this same court in this same case, arguing a very similar issue, specifically whether the Commodity Exchange Act should protect individual investors or investors in general who traded COSB 200 futures contracts on the CME Globex. Around three years ago, this panel agreed with me and held that if irrevocable liability occurred on the CME Globex, then these are domestic transactions under Morrison and investors who transacted on the CME Globex should be protected by the Commodity Exchange Act. Now, while the factual underpinning of that decision has never been challenged, the transaction issue, irrevocable liability did happen in the United States. The district court recently granted summary judgment that had the same effect, dismissing the Commodity Exchange Act claim and holding that the Commodity Exchange Act did not cover these investors or these investments because of a never-before-interpreted claim. Right. Mr. Eisencraft, as you know, I was on that panel on the previous case, and the question that's presented here as to whether or not the trading is subject to the rules of a registered entity was not the issue in that case. The only issue in that case was whether or not the activities that did occur met the domestic transaction requirement as far as the extraterritoriality problem was concerned. And you said there was no extraterritoriality problem. But this is a wholly different issue. And this is an issue about whether there is a subject to the rules of a registered entity. And that's where we focus our attention now. And I would like to hear why you think that there is a registered entity here that rules subject to these transactions. Absolutely, Your Honor. And yes, I know it is a different provision. It's not a Morrison issue. It's a subject to clause. But I would argue that this is the first time a court has ever held that. I mean, the district court decision has ever held that a futures transaction on U.S. soil is not covered by the Commodity Exchange Act. So the practical importance is the same. But yes, let me address the subject to clause, of course. So we believe that there are, you know, this is summary judgment, and we believe we've put forward abundant evidence to, at the very least, create a material issue of fact as to this issue. First of all, the CME Globex itself, its materials state that for the text of actual rules or interpretations governing Globex, go to the CME, CBOT, or NIVEX rulebook. Those are all registered exchanges. So we assert that this means exactly what it says, that the CME Globex is governed by the rules of the CME group's exchanges. Wait a minute. This is Judge Nardini. Are you alleging they're governed by all of them? Well, that's, they're almost, they're basically, they've been harmonized. They're essentially the same rules. There's not really a material difference between them. Yeah, but they're subject to one or the other, right? Well, I would argue, I mean, I don't think, they're the same. There's not a material difference as to which one. But what's the authority? I'm sorry, go ahead. Go ahead. Answer, Judge. Absolutely. So the authority is that the Globex rules, which is Chapter 5 of the CME, are the same for the other rulebooks as well, to my understanding. So those are the rules that govern. No, no, no. I'm asking whose rules? I mean, Major League Baseball could adopt these rules. You wouldn't claim that because they're the same rules, they're governed by Major League Baseball, right? Correct. Major League Baseball definitely does not have jurisdiction over here. So who is a registered entity? CME is a registered entity we are focusing on. Okay. Well, now, okay, first of all, the Globex platform is not a registered entity. We can all agree on that, right? Correct. Okay. So, but the CME rulebook, and you're relying on the CME, limits its own scope to futures contracts that are created and listed on the CME. And, you know, COSPI future contracts are not CME futures contracts. They're futures contracts regulated by the KRX in Korea. The rulebook doesn't support you. I don't see how it does, even though there's a reference to it. And obviously the reference that you referred to a minute ago is the general reference that would pertain to domestically regulated trading. This is not domestically regulated trading. This is foreign regulated trading. And so I don't follow how your argument, I don't follow at all your argument that the CME regulating the trading here. Respectfully, Your Honor, I disagree that the CME rulebook only governs CME contracts. It does not say that. It does only list CME contracts in the CME rulebook. But Chapter 5 of the CME rulebook, which governs CME Globex transactions, is a general provision. And what we've done in our brief is list examples from those provisions that make the most sense if they apply generally to the CME Globex, not just specifically the CME futures contracts traded on the CME Globex. For instance, I mean, the CME Global Command Center. Anybody whose transactions are matched on the global platform, CME Globex platform, is subject to the regulation of what? Because anybody can use the global platform, and that way you could actually have multiple, by your argument, multiple exchanges regulating the same securities. And that can't be right, can it? Yes, yes, it can. I mean, we acknowledge that the KRX, the Korean exchange, certainly does regulate the Cosby 200 futures trading. But we also believe that the CME rulebook also applies because they're transacting on U.S. soil via the CME Globex rules. You have one minute left. Thank you. So, the larger point, sorry. Mr. Stegnowski's declaration in which he says that, in effect, that the KRX bears all responsibility and must perform all regulatory obligations with respect to contracts traded on the CME Globex. And also, there's evidence here from CME itself that they've affirmed that these futures contracts are regulated exclusively by KRX, including when they're matched on the CME Globex. When I first saw the declaration from the CME, I read it very carefully. And I was wondering why they didn't, they kind of avoided the central issue. We've always agreed that. You're saying they affirmatively didn't say they didn't. They didn't regulate. Correct. But say it's exclusively by KRX. I mean, it amounts to the same thing, right? No, no, Your Honor. I do not believe it's the same thing. So, we've acknowledged from our complaint that the primary responsibility for regulating these futures contracts is the KRX. But in order to be United States and trade the United States, they also have to be covered by the CME rules. So, the CME has never said that it monitors or, you know. There's no, that's an ifsy-dixit on your part. Where's the evidence that they are covered by the CME rules? Has there been any rule application by the CME? Have they ever regulated these trades? I mean, we argue that the CME rulebook itself, also the no-action letter that permitted, only permitted the trading of COSB 200 futures in the United States if it was subject to, you know, the Commodity Exchange Act. And also, the actual 1989 memo that first created the CME Globex and allowed it to be permissible says that, and I know it was the only thing traded at the time. But it says that trading through Globex would be conducted subject to CME rules and would not interfere with the greater regulatory scheme for trading futures in the United States. And we have an expert who, the lower court disregarded his opinion, who is a former director of the Division of Trading at the Commodity Futures Exchange, who is a member of the Presidential Commission before Congress. And he says, this doesn't make any sense. Futures contracts in the United States can only be traded when they're covered by the Commodity Exchange Act. This is the central regulatory core to protect investors. It doesn't make any sense that a transaction, just because it happens on the CME Globex, can be immune from the Commodity Exchange Act. Just to follow up on Judge Walker's question, I take it then that there's no direct evidence of CME directly regulating trading of COSB 200 futures on Globex. You've pointed to the things that are in your briefing. Yes, there's nothing outside of that I'm aware of outside of my brief. Correct. I didn't hold anything back. Got it. But I would also argue there's nothing. I mean, you know, whenever I enter into, you know, I click through and, you know, and it says, like, you're exiting protected space, the Internet or something like that. There is nothing, no mention of anything in any material saying that the trading of COSB 200 futures and all these other futures contracts, there are like four or five exchanges that are non-domestic that trade on the Commodity Exchange Act, that says that, hey, if you trade these futures transactions, you are not protected by the Commodity Exchange Act, and you're not covered by CME rules. You're not covered by any rules in the United States exchange. There's no more than that of any sort. Is there a requirement? If something is not covered by American rules, is there a law that says they have to have a disclaimer saying that they're not governed? I mean, that kind of is odd, don't you think? I mean, do they have to list every law that they're not subject to if they're not subject to it? Well, what I'm arguing is that these are, the rule book seems like a general, a rule book of general likability. The GloVex materials say, go to these rules. The no action letter says, of course, it's covered by the Commodity Exchange Act. Most of the trades are domestic and therefore go to these rules because there are regulating entities here that cover other domestic transactions. This is a foreign transaction, and it's regulated by the Korean exchange. So it's an odd duck, and the rules were not written in a way that would cover all possibilities. This is a possibility, and had they done so, there's nothing in the rules that indicate to me that there is a domestic regulating entity here. Particularly when the exchange itself, the CME itself, has said that it's exclusively regulated by the Korean exchange. Respectfully, Your Honor, it's not a foreign transaction. It's a domestic transaction. It takes place here. The people who trade on the CME GloVex after hours. The trade tradings are, all we said in the earlier case was that the trades are matched on the GloVex. But the case of the transaction is settled in Korea. Yes. So that's where the actual transaction occurs. I mean, there's binding activity here. That's all we said. But the actual trade itself is not settled here. In fact, the Korean Financial Services Commission, I think your complaint alleges that the trading at issue here was referred by that commission in Korea to Korean prosecutors, right? Yes. The Korean regulatory authorities certainly do have jurisdiction over this. What I'm arguing, though, is that when the trades take place in the United States, investors here should not have to go to Korea to get relief. And I don't think relief is possible for private investors, especially under a class mechanism in Korea. What they should do or shouldn't do is something else. I mean, you make policy arguments here that may make sense in some context, but we're bound by the evidence and the rules. I mean, we can't bend the rules here in a way that suits your interests. It may be good policy, but Congress hasn't acted in this area. And, you know, that's not our goal to fill in to fill in every every loophole. I mean, loopholes exist. Of course, your honor, I'm not asking. I'm certainly not asking you to bend any rules or take any action that's not supported by the evidence. What I'm saying is that this is summary judgment. We have put forward a number of a number of points. The rulebook, the no action letter, the materials, the scenic glowbacks that we believe at least raise an issue of material fact as to whether these transactions were potentially covered by the senior rulebook. The crucial purpose of this statute is to protect individual investors. It's a standard rule of statutory construction to interpret. Let's clear up. We're talking here about a pure question of fact. Right. I think both parties agree to that. It's not there's no it's not a question of law or a mixed question of fact. Is that is that a mixed question of fact and law? Is that is that correct? Pure question. I think it's a mixed question of fact and law, but mostly fact. It's hard to it's hard to draw that line. But I believe the mixed question. On summary judgment, the real question for us is whether a reasonable jury can reach a verdict in your favor or make a finding in your favor that this is is regulated. That's that's essentially what it is. So we're looking at the at the evidence and seeing whether as the district court was correct, that the evidence is such that it really becomes as a matter of law. You couldn't you couldn't win. That's that's that's essentially what we're. That's the framework we're working in. Correct. Of course. And I would respectfully submit that there's a lot of wide wide term negative space here. There's a lack of you know, there's a lack of evidence that that means something, whether there's a lack of warning signs, the lack of anything anywhere saying that that, you know, and whether whether whether the words mean that there are different interpretations of the same thing, of, you know, what certain rules mean, the most reasonable interpretation of them. Under your theory, wouldn't it be possible with, you know, this with the the evidence that we have that's there from CME, CME and presumably presumably there would be similar evidence from from other exchanges that any time a a trade, a commodity trade is used as the glowbacks for matching, that there could be multiple regulatory entities. Not maybe not in this case, but in other cases that that would would simply by virtue of the glowbacks being used and the state, the statement that you've read from from the glowbacks about look to the rules of these other exchanges, that you could use that argument to argue that there are multiple regulatory exchanges on virtually every transaction that goes on on the glowbacks. And then you'd have you'd have there's no differentiating, really, under your theory. Isn't that a possibility? And how can that be? Well, not not quite right. I mean, I don't I'm not arguing. I don't think anyone would that a CBOT transaction is covered by the CME rules or the NYMEX transactions covered by the CBOT rules. What we're talking about here is, you know, a very small segment of the market, but an important one precedent wise and legally where they're not covered by a you know, they're not they're not contracts created by a domestic exchange, but they're traded here. And I believe the CFTC allow them to be traded here because they were covered by the rules of the CME via the CME glowbacks rules. And the Korean exchange is capable of regulating this, as we as it's been pointed out. Complaints were made there and they investigated. So they're capable of regulating and they also prohibit manipulative trades, spoofing and that kind of thing, don't they? Sure. Of course, there's no incompatibility between exchanges. But these are these are these are people who transacted here. And I argue that they are entitled to the protection of American law governing futures transactions. That's what the that's what the Commodity Exchange Act does. They shouldn't. And the idea that that there's no issue of fact here, like, you know, we did. You know, I'm not arguing this is a slam dunk issue on our on our side. We didn't move for some right judgment here. We believe this is an issue for a finder of fact. Defendants are extremely good lawyers and they have some they have some reasonable arguments here. That's why we think it's an issue of fact for it for a fact finder. But, you know, I don't think it's I don't think you can say we have no we have plain language of materials by the CME glowbacks. We have rules that we that we we think their best interpretations, their rules of general applicability. We have an expert saying this is this is the only result that makes sense from regulatory point of view. We have, you know, the foundational documents of the CME glowbacks. All this together at least creates an issue for a finder of fact. That's all I'm arguing for here. OK. OK. Thank you, Mr. Eisencraft. You've got a few minutes for rebuttal. We'll hear next from the appellee, Mr. Levine. May it please the court. Noah Levine for the defendants. The district court judgment should be affirmed here because while it was plaintiff's burden to do so, they haven't established or pointed to any record evidence that even suggests that the trading of the COSPI 200 futures contract on the Korean exchange is subject to the rules of a completely different exchange to CME. The district court was correct for three primary reasons. First, the CME rulebook affirmatively demonstrates that it does not govern trading of the COSPI 200 futures contract on the Korean exchange. The rulebook specifies that its rules apply to exchange futures and it defines exchange as the Chicago Mercantile Exchange. We also cited to rule 520 of the CME rulebook, which is the introductory first rule of the trading practices section that defines its scope. And that says, again, referring to exchange products, it says all trading in exchange products must occur on or through exchange facilities and in accordance with exchange rules. The rulebook also lists in hundreds of chapters from 52 through 902 the hundreds of contracts to which it applies and not a single one of them is the COSPI 200 futures contract. And finally, the rulebook doesn't state once that it applies to COSPI 200 futures traded on the Korean exchange. And indeed, the rulebook doesn't even mention the Korean exchange. We think the rulebook leaves no doubt. But second, even if there were, there is evidence from the CME group here, an unrebutted declaration, as well as repeated issuances from the CME group in past circumstances that still have not been explained by the plaintiffs. The CME group declaration begins by explaining how each rulebook applies to the trading of products on a particular exchange. It says in paragraph five, different rulebooks govern trading depending on which exchange a product is listed on. In other words, there are not multiple exchanges regulating each instance of trading on an exchange. It depends which exchange it's on, and then you pick that rulebook. The declaration then explains how that's relevant to the issue here. It says the products, which are the COSPI 200 futures, are not listed on a CME group exchange. And the trading itself remains governed by the KRX rulebook. It's entirely natural that the CME group would speak affirmatively here because this is how trading in futures works. A contract has no existence apart from the exchange on which it trades, and each exchange is expected to regulate it. With all due respect, there is no negative space there. But even if they thought there were as it goes on, it explains that KRX bears all responsibility. It must perform all regulatory obligations with respect to any of these COSPI 200 contracts traded on CME Globex. And it says that CME does not now, has not ever provided any of these regulatory functions for those KRX products. With all due respect, there is no negative space there whatsoever. The point that the CME declaration makes about each of its rulebooks only applying to trade on that particular exchange is also important. Because I think, as the panel noted, plaintiff's theory here necessarily embraces the absurdity, even though plaintiff's counsel denies it, that a CBOT trade would be subject to the CME rules. Because all of their arguments for why the CME rules have to apply beyond the CME rulebook are that they have to govern everything on CME Globex. Well, CBOT uses Globex, NYMEX uses Globex, COMEX uses Globex. But we know that that theory can't possibly be right because the CME group has explained it in language in its declaration that has not been rebutted. The position of the declaration isn't new. We showed in our brief that in CME Globex notices issued over the years, they've said the same thing. When they discuss CME products, they say that these contracts are listed with and subject to the rules and regulations of the CME. And when they discuss COSPI 200 features, the Globex notices say, in contrast, on the very same page, these features are listed with and subject to the rules and regulations of the Korea Exchange. That's at page 577 of the appendix. And it's not just the CME group that explains it this way. It's the Korean Exchange as well. They issued a guide to trading of COSPI 200 features traded on the CME Globex. And in that guide, they say that the guiding principle is that while the orders are matched on the CME Globex platform, COSPI 200 features that are traded on Globex are products listed on KRX. Therefore, this is their issuance. It says, therefore, COSPI 200 features traded on Globex are subject to the rules and regulations of the KRX. And as we've shown, the KRX rulebook, just like the CME rulebook for CME contracts trading on Globex has its section, the KRX rulebook has its own chapter on COSPI 200 features trading over Globex. And third, what the CME rulebook affirmatively states and what it doesn't state, and what the CME group confirms by declaration, is the only state of affairs that's consistent with the fundamental premise of U.S. futures regulation and the CEA itself. A core principle of a designated contract market under the CEA is that it has to establish, monitor, and enforce compliance with rules concerning the terms and conditions of its contracts and rules regarding trading to guard against manipulation. So, if the CME really did, I ask you, would adopting your position have any implications for the CFTC's regulatory authority, or is that unrelated to Section 9? It would not. And, you know, this is where I think the no action letter really demonstrates the point. I don't know why plaintiffs rely on it so much. The no action letter is an example of the CFTC recognizing that under the Commodities Exchange Act, it believes it has the authority to regulate these types of contracts, even when trading on the Korean exchange, but declining to do so. That's the reference to Section 4A of the Commodities Exchange Act in that no action letter. The Korean exchange was coming to ask the CFTC to give it no action release so that futures commissions merchants could offer the COSPI 200 contract for sale within the United States. And they wanted to make sure that they weren't going to have to register as a designated contract market. The CFTC examined the supervision and regulatory structure in Korea and how this trading was regulated there, including the Financial Services Commission of Korea and everything there, and they made the conclusion. They said this is fully adequate to address the anti-manipulation concerns of the Commodities Exchange Act. So, they were giving them no action release. They were not requiring them to register as a designated contract market. Of course, if they had required them to register as a designated contract market, then there'd be no Section 9 issue in this case because the COSPI 200 futures contract would be trading on a registered entity. They did not. And that no action letter shows why this policy argument, which has no relevance because there's no statutory interpretation question here, but even if it did, why the policy argument is completely wrong. The CFTC has this authority. It didn't use it. It said we reserve our right to come back if that regulatory structure changes or other things change. So, it's there. There's no reason to believe that these types of transactions, which, by the way, are traded in Korea. It may be using a matching engine here, and there may be a plausible basis for irrevocable liability here, but the trades are submitted in Korea. They're cleared in Korea, and they happen on the Korea Exchange. There's no reason to believe that that's going to go unregulated. In essence, the last position here is that the Commodities Exchange Act requires an exchange to be very explicit, to establish its rules, to monitor its rules, to enforce its rules about trading practices. If the CME intended to extend its rules to cover trading that was happening on an entirely different exchange, it would say so explicitly. Indeed, the Commodities Exchange Act would require that it do so explicitly, and they haven't. And the reason is the reason they gave in their declaration. It is because each of their rulebooks applies to trading on that exchange. An exchange can't regulate by silence, inference, or implication. So, in conclusion here, we have the actual clear indication of the rulebook itself, and we have both organizations that are involved in here, the CME Group as the owner of the Chicago Mercantile Exchange and the Korean Exchange saying the same thing, and both of them saying it over and over and over again. And that is the only state of affairs that is consistent with the fundamental premise of U.S. futures regulations and the Commodities Exchange Act. Before you finish, can I ask you, isn't there some tension, though, with our prior decision? I mean, there we said the trading is domestic for CEA purposes. And now we'd be saying, well, that didn't matter because the trading wasn't subject to the CEA anyway. It's a little bit superfluous. No, Judge Bark. The reason is that that was an extraterritoriality defense based on Morrison. We were saying that if the act were to apply that way, it would necessarily be extraterritorial under the principles of Morrison. This court didn't even look at the Exchange Act wrong, nothing having to do with the Exchange Act, only looked at irrevocable liability and said that Morrison, the extraterritoriality defense of Morrison doesn't preclude application of the CEA. But nothing in that statute said that it does. And to be clear, as I just explained in explaining the no action letter, while the Commodities Exchange Act generally does not require a foreign board of trade to come register as a designated contract market. So generally speaking, trades that happen on a foreign board of trade are not going to be subject to Section 9. It has authority to do that. The no action letter is one example. Another example is a provision of the Commodities Exchange Act that was added in Dodd-Frank, Section 7 U.S.C. Section 6B that says that the CFTC can require foreign boards of trade to register if they're going to offer direct access to the United States. That's not happening here. There's absolutely no question that all of these trades have to happen through the Korean exchange. Thank you. So the point here is that we're not we didn't come into court here today and say because this is foreign, this doesn't apply. We're not making the extraterritoriality arguments this time around. What we are saying is that we need to now focus on the statute. We need to figure out whether the statute by its words applies. Plaintiffs concede that this trading did not happen on a registered entity. We all agree on that. So now the only question is whether it was subject to the rules of a registered entity. They put all their eggs in the basket of the fact that it was the CME. And their theory is because it happened on Globex, the CME rulebook has to apply there. That theory would apply to trades on every single product trading on CME Globex, including CBOT, including NYMEX, including COMEX. We know that isn't true. The CME group said it isn't true. That's consistent with how futures regulation works. So, no, I don't think that there's any tension with the prior decision at all, Judge Park. If the court has no further questions. Thank you, counsel. Mr. Eisencraft, you've got two minutes for rebuttal. Yes, your honors. So there are two alternative worlds here. One in which, as opposing counsel Abley laid out, there is a group of investors who trade on the CME Globex who are only protected by Korean regulations and Korean law, even though those trades are matched here and for more some purposes are considered domestic transactions. You just hypothesize that they trade on the CME Globex. They trade on the trade on the Korean exchange, which employs the Globex to help match to match trades. That's that's that's a small one component transaction that has other aspects to it. The offer is made or the bid is made and and then there's a clearance. And that's all done in Korea. Well, your honor, the offer and acceptance happens on the CME Globex. That's where the bind happens. That's where the trade. I mean, I view that, you know, the clearing happens in Korea, but the offer exchange and acceptance happens on the CME Globex. That's what the price are matched. Excuse me, you have one minute left. And so the other the other alternative view of the world is that. But there is not some isolated pocket of investors who are not covered by the CME rule CME rules or not covered by any by the Commodity Exchange Act. And that there's no notice of this anywhere. And these are two views of the world. And I would I argue that this is an issue for a jury. There is nothing explicit saying that the CME rules do not apply anywhere. There is also, you know, and then there's a there's no question that if it's in a CME rulebook, if the CME says we also concurrently cover the KRX with our rulebook, just a section of our rulebook covering the Globex. That would count under these under this under this under this law. The CME can cover. The KRX transactions cost 200 transactions under its rulebook, they can be subject to the CME rulebook. There's no inconsistency that that's not an impossible world. That's actually the world. I think most people assume these are traded under. And there are these two alternative views. There's no and I would argue that there's no definitive evidence either way. We we point to the rulebook. They point to the rulebook. We point to this. They come up with a different interpretation of this. We have an expert saying this doesn't make any sense. Otherwise, I'm sure a couple of experts saying it only makes sense. Otherwise, this is a factual issue that's suitable for a finder fact. It's not suitable for some. We don't have there's not enough information. There is no definitive view from anyone. If people are just saying, you know, KRX is the main regulator. Yes. But whether the CME rulebook and the CA applies, there's nothing definitive on that. I would submit your honors. And I think I am out of time. So thank you very much for your consideration. I'll share further questions. Thank you both. We'll take the matter under advisement.